UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KENNETH HUGHES,

               Plaintiff,

v.

SARAH SCHROEDER, et al.,

               Defendants.

_____/

Case No. 2:25-cv-139

Honorable Phillip J. Green

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed *in forma pauperis* in a prior order. (ECF No. 7.)  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act,* 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth,* 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim as detailed below.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan.  Plaintiff sues the following MBP staff in their individual and official capacities: Warden Sarah Schroeder, Sergeant Unknown Vrabrel, Lieutenant Unknown Allen, Assistant Deputy Warden (ADW) Michael James, Dr. Derek Falk, and Correctional Officers Unknown Parties #1–5, named as John Does #1–5 in the complaint. (Compl., ECF No. 1, PageID.2–5.)

In Plaintiff's complaint, he alleges that on February 17, 2025, he was placed in Q Unit "to eliminate a problem with Plaintiff and staff."[2]  (*Id.*, PageID.6.)  Plaintiff states that he "was placed in a cell that was unclean [and] unsanitary to eat [in]." (*Id.*)  Plaintiff describes the cell as being "infested [and] dirty with other inmates' feces on the walls and window," and having "urine . . . on the floor and sink."  (*Id.*) Further, Plaintiff states that "he was denied cleaning supplies." (*Id.*)  Plaintiff alleges that as a result of this, "Plaintiff did not eat causing [him] to be placed on hungry [sic] strike" for nineteen days.  (*Id.*)

---

[2] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

During the time that Plaintiff was not eating, Defendant Dr. Falk conducted rounds "once or twice a week to do a weight check and vitals check on Plaintiff's condition." (*Id.*) Plaintiff claims that Defendant Dr. Falk "concluded that the injury will worsen by kidney failure and other results." (*Id.*) Plaintiff also claims that Defendant Dr. Falk "opined that as weight degrades, Plaintiff's pain would become increasingly severe and mobility would become increasingly restricted," "eventually consigning Plaintiff to a wheelchair if his condition remain untreated." (*Id.*, PageID.7.)

On an unspecified date, "Plaintiff was presented with two possible remedies, both unhealthy." (*Id.*) Plaintiff claims the first option was "to eat in a[n] unsanitary cell," and the second option was "to eat in this unsanitary cell, possibly getting sick and being degraded and humiliate[ed]." (*Id.* (phrasing in original retained).)

Further, Plaintiff alleges that during the time that Plaintiff was not eating, he "was being checked on by administration higher ups." (*Id.*) Plaintiff claims that Defendant Warden Schroeder "did routine arounds along with [Defendant] ADW James and other chain of command authorities to check on Plaintiff's weight transition." (*Id.*) Plaintiff alleges that he "talked to every Defendant to make sure it was aware of Plaintiff's conditions." (*Id.*)

On February 24, 2025, "the administration did routine rounds in Q Unit [and] the Defendants w[ere] aware Plaintiff was given vitals and weight check [and] did no time Plaintiff decline[]." (*Id.* (phrasing in original retained).)

5

On February 28, 2025, the "administration [again] made routine rounds in Q Unit," and "the Defendant Warden Schroeder and Defendant ADW James w[ere] aware of Plaintiff['s] consistency of vitals check and weight check." (*Id.*, PageID.8.)

Plaintiff alleges that "leading up to March 5, 2025, Plaintiff ha[d] complied with every weight an[d] vitals check with[out] any resistance." (*Id.*)

Plaintiff was "still [being] monitor[ed] by [the] administration," and "the Defendant Warden Schroeder spoke to Plaintiff on several occasions [and] Plaintiff explained his conditions." (*Id.*)  Plaintiff claims that he "was adamant about explaining to Defendant Warden Schroeder about the cell being unsanitary that it was body fluids on the sink and toilet and floor, [and] also urine on the floor." (*Id.* (phrasing in original retained.)

Plaintiff alleges that an unspecified time, he "asked to be remove[d] from the unsanitary cell into a clean, sanitary cell w[h]ere Plaintiff can start eating and feeling better to be taken off hungry [sic] strike," but "Plaintiff was denied." (*Id.*)

On March 5, 2025, "Plaintiff was exhausted, barely moving [his] body, [and] was severely aching in undeniable pain." (*Id.*)  At that point, Plaintiff "was going on 16 days without consuming any food and ha[d] lost a gain of weight approximately up to 35 pounds in 2 weeks." (*Id.* (phrasing in original retained).)  Around noon on March 5, 2025, "Plaintiff was asked do he want a vitals and weight check[]," and "Plaintiff assumed this was a choice . . . because [Defendant] Dr. Falk asked the Plaintiff." (*Id.*, PageID.9 (phrasing in original retained).)  "Plaintiff told [Defendant] Dr. Falk that he [wa]s not refusing the check up, he simply explained to the staff and

Dr. Falk he need[ed] assistance between he was not in the condition[] to walk approximately 40 to 50 feet to the medical station." (*Id.*)

At some later point on March 5, 2025, Defendant Warden Schroeder came to Plaintiff's cell, and "he told the Defendant he was not refusing anything, that he can't meet the requirements that's asking of him," and Plaintiff explained that "he cannot walk, he explained that he [was] dizzy and lightheaded from not consuming any food." (*Id.*)  Plaintiff "asked the Defendant Warden Schroeder for assistance by requesting the chair to complete the check up without any issues; the Plaintiff was surely trying to set aside any problems." (*Id.* (phrasing in original retained).)

Then, Defendant ADW James came to Plaintiff's cell, and "Plaintiff also explained to the ADW James that the conditions he is in he cannot get up from the bed without getting dizzy and falling out." (*Id.* (phrasing in original retained).) Plaintiff "ask[ed] Defendant ADW James for a chair or ask[ed] Defendant ADW can the vitals machine be brought to the cell door," and "Plaintiff was denied." (*Id.*)

At around 2:00 p.m. on March 5, 2025, "Plaintiff was then approached by Defendant Sgt. Vrabel," and "the Defendant told the Plaintiff he ha[d] a direct order to get up and come out to get vitals and weight check." (*Id.*, PageID.10.)  Plaintiff told Defendant Sergeant Vrabel "that he is not able to walk to the medical station," and "Plaintiff then offer[ed] to explain to the Defendant that he is not refusing the direct order [and] then asking Defendant to bring the chair so he can comply with the direct order," but "Plaintiff was denied." (*Id.*)

Thereafter, Defendant Lieutenant Allen came to Plaintiff's cell and gave Plaintiff "a direct order to get up and walk to the medical station." (*Id.*) "Plaintiff again explained to the Defendant that he is not refusing the direct order, [and] he told Lt. Allen that he was in no condition at all to be walking," and Plaintiff asked Defendant Lieutenant Allen "for assistance by bringing the vitals machine and digital weight scale to the Plaintiff," and "Plaintiff was denied." (*Id.*)

Approximately, one hour later, at around 3:00 p.m., "Plaintiff was resting." (*Id.*) Defendant Sergeant Vrabel "and five other John Does" came to Plaintiff's cell, and Defendant Sergeant Vrabel "yelled at Plaintiff [to] get out [of] the f[******] bed and come to the cell door and cuff up now." (*Id.*, PageID.10–11 (asterisks added).) "Plaintiff lifted his head from the bed dizzy from hunger," and "then proceeded to go back to sleep." (*Id.*, PageID.11.) Then, Plaintiff's "cell door slot came bursting open an[d] Defendant Sgt. Vrabel sprayed the can of tear gas at the Plaintiff hitting him in the head area." (*Id.*) Plaintiff claims that he "did not show any signs of threat towards the Defendants nor did Plaintiff show any threat to himself at no time." (*Id.* (phrasing in original retained).) Defendant Sergeant Vrabel then "screamed at Plaintiff" to get up, and "Plaintiff did as he was ordered to do." (*Id.*) Plaintiff "crawl[ed] off the bed," and Defendant Sergeant Vrabel "yelled at Plaintiff to stand the f[***] up." (*Id.* (asterisks added).) "Plaintiff did as he was told and stood up," and "Plaintiff was then cuffed up" and placed in the suicide chair to be "rolled over to [the] medical station." (*Id.*) Plaintiff claims that he "was not given the proper vitals check nor did the Plaintiff get a proper weight check." (*Id.*)

8

At some point after this, "Plaintiff was taken to another cell, Q-2, and given the same treatment by the cell extraction team." (*Id.*)

On March 6, 2025, "Plaintiff was asking for medical attention for his arm being burn[ed] an[d] eyes." (*Id.*, PageID.12.) Plaintiff alleges that his "arm was severely burned [and] skin was black an[d] swollen from the tear gas." (*Id.*)  Plaintiff also alleges he "was asking the Defendant to be treated for his eyes," which were "blood shot red from the tear gas." (*Id.* (phrasing in original retained).)

On March 22, 2025, "Plaintiff also was suffering from eye damages," and he "filled out a health care request form asking medical for attention for eye care." (*Id.*)

Based on the foregoing allegations, Plaintiff raises conditions of confinement, medical care, excessive force, and deliberate indifference claims under the Eighth Amendment against Defendants. (*Id.*, PageID.13.)  Plaintiff seeks declaratory and injunctive relief, as well as monetary damages. (*Id.*, PageID.13–14.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility

9

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.  Analysis

### A.  Official Capacity Claims

Plaintiff sues Defendants in their individual and official capacities. (Compl., ECF No. 1, PageID.2–5.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will*

10

*v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  The states and their departments are immune from suit in the federal courts under the Eleventh Amendment, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment.  *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.  Here, Plaintiff seeks monetary damages, as well as a declaratory judgment.  However, Plaintiff fails to state a claim against Defendants in their official capacities for monetary damages.  *See, e.g.*, *Will*, 491 U.S. at 71.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief

11

constitutes an exception to sovereign immunity.  *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official).  The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state.  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).  Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority.  *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again.  *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).  A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally.  *Lyons*, 461 U.S. at 102.

In the present action, Plaintiff does not allege the existence of an official policy or practice, or suggest that the activities alleged in the complaint are likely to occur to him again.  Instead, Plaintiff's allegations relate solely to past harm, not future

risk of harm.   Therefore, Plaintiff does not seek relief properly characterized as prospective.  *See Ladd*, 971 F.3d at 581.  Moreover, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims.  *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at MBP, which is where he avers that Defendants are employed.   Thus, Plaintiff cannot maintain his claims for declaratory and injunctive relief against Defendants, and the Court will dismiss these claims.

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim.

## B.    Eighth Amendment Conditions of Confinement Claims Regarding Plaintiff's "Unsanitary" Cell

Plaintiff raises Eighth Amendment conditions of confinement claims regarding the "unsanitary" conditions of his cell. (Compl., ECF No. 1, PageID.13.)

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).   However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).   Moreover, "[n]ot every unpleasant experience a prisoner

might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In this case, Plaintiff alleges that the cell where he was placed in Q Unit "was unclean, [and] unsanitary to eat [in]," and Plaintiff describes the cell as being

14

"infested [and] dirty with other inmates' feces on the walls and window" and having "urine . . . on the floor and sink." (Compl., ECF No. 1, PageID.6.) The Court assumes, without deciding, that these allegations satisfy the objective component of the relevant two-prong standard. However, as to the subjective component, with the exception of Defendant Warden Schroeder, Plaintiff fails to allege sufficient facts to show that the other Defendants were aware of the conditions of his confinement.

Specifically, Plaintiff alleges that on February 17, 2025, when he was first placed in the cell in Q Unit, "he was denied cleaning supplies." (Compl., ECF No. 1, PageID.6.) However, Plaintiff does not allege that any of the Defendants denied him cleaning supplies on that date. Further, Plaintiff alleges that during the time that Plaintiff was not eating, he was "being checked on by administration higher ups," and that Defendant Warden Schroeder "did routine arounds along with [Defendant] ADW James and other chain of command authorities to check on Plaintiff's weight transition," and he alleges that he "talked to every Defendant to make sure it was aware of Plaintiff's conditions." (*Id.*, PageID.7.) However, "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (citation omitted)). And, regardless Plaintiff does not allege any facts about what

15

"conditions" he made "Defendants" aware of when Defendants were "check[ing] on Plaintiff's weight transition" while he was not eating; indeed, his allegations suggest that the "conditions" the Defendants were aware of were Plaintiff's physical changes due to not eating, not the conditions of his cell.    Plaintiff also alleges that an unspecified time, he "asked to be remove[d] from the unsanitary cell into a clean, sanitary cell w[h]ere Plaintiff can start eating and feeling better to be taken off hungry [sic] strike," but "Plaintiff was denied."  (Compl., ECF No. 1, PageID.8.) However, Plaintiff does not allege that any of the named Defendants had knowledge of this request, let alone that they denied the request.  (*See id.*)  Therefore, for these reasons, any intended Eighth Amendment conditions of confinement claims against Defendants Vrabel, Allen, James, Falk, and Unknown Parties #1–5 will be dismissed for failure to state a claim.

As to Defendant Warden Schroeder, Plaintiff claims that "the Defendant Warden Schroeder spoke to Plaintiff on several occasions [and] Plaintiff explained his conditions" and he "was adamant about explaining to Defendant Warden Schroeder about the cell being unsanitary that it was body fluids on the sink and toilet and floor, [and] also urine on the floor." (*Id.*, PageID.8 (phrasing in original retained).)  At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him.  Under these circumstances, at this time, the Court will not dismiss Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Warden Schroeder regarding the unsanitary conditions of Plaintiff's cell.

C.    **Eighth Amendment Medical Care Claims**

In addition to Plaintiff's conditions of confinement claims, the Court construes Plaintiff's complaint to raise Eighth Amendment claims regarding the alleged denial of medical care. (*See, e.g.*, Compl., ECF No. 1, PageID.13.)

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying

17

medical care.  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer*, 511 U.S. at 835.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

Here, Plaintiff alleges that during the time that Plaintiff was not eating, Defendant Dr. Falk conducted rounds "once or twice a week to do a weight check and vitals check on Plaintiff's condition." (Compl., ECF No. 1, PageID.6.)  Plaintiff does not allege that Defendant Dr. Falk ever denied Plaintiff medical care during this time.  (*See generally id.*)  To the contrary, Plaintiff alleges that Defendant Dr. Falk spoke with Plaintiff about the risks of continuing to not eat.  (*See id.*, PageID.6–7 (stating that Defendant Dr. Falk "opined that as weight degrades, Plaintiff's pain would become increasingly severe and mobility would become increasingly restricted," "eventually consigning Plaintiff to a wheelchair if his condition remain untreated").)  Further, Plaintiff alleges that on March 5, 2025, he "explained to Defendant Dr. Falk that he [wa]s not refusing the check up [for his vitals and weight], he simply explained to the staff and Dr. Falk he need[ed] assistance between he was not in the condition[] to walk." (*Id.*, PageID.9.)  Plaintiff does not allege any facts about Defendant Dr. Falk's response to Plaintiff, and under these circumstances, Plaintiff fails to show that Defendant Dr. Falk disregarded Plaintiff's medical needs.

18

Additionally, Plaintiff alleges that on March 6, 2025, "Plaintiff was asking for medical attention for his arm being burn[ed] an[d] eyes," and Plaintiff also alleges he "was asking the Defendant to be treated for his eyes," which were "blood shot red from the tear gas." (*Id.*, PageID.12.)  Further, Plaintiff alleges that on March 22, 2025, "Plaintiff also was suffering from eye damages," and he "filled out a health care request form asking medical for attention for eye care." (*Id.*)  However, Plaintiff does not allege that any of the named Defendants had any knowledge of these requests for medical care, and Plaintiff's reference to an unnamed "Defendant" is insufficient to hold any of the named Defendants liable.  *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Accordingly, for all of the reasons set forth above, Plaintiff's Eighth Amendment medical care claims against all Defendants will be dismissed for failure to state a claim.

### D. Eighth Amendment Excessive Force and Deliberate Indifference Claims

#### 1. Excessive Force Claims

The Court construes Plaintiff's complaint to raise Eighth Amendment excessive force claims against Defendants Sergeant Vrabel and Correctional Officer Unknown Parties #1–5.

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)).  Among unnecessary and wanton inflictions of

pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9. "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to Eighth Amendment claims. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

20

As to Defendants Correctional Officers Unknown Parties #1–5, Plaintiff alleges that these Defendants, along with Defendant Sergeant Vrabel, were part of the cell extraction team that came to Plaintiff's cell on March 5, 2025. (*See* Compl., ECF No. 1, PageID.10.) Plaintiff acknowledges that when the cell extraction team arrived at his cell, he did not comply with Defendant Sergeant Vrabel's order "to come to the cell door and cuff up now." (*Id.*, PageID.10–11.) Defendant Sergeant Vrabel then "sprayed the can of tear gas at the Plaintiff." (*Id.*, PageID.11.) After Plaintiff complied and was taken to medical, Plaintiff alleges that he "was taken to another cell, Q-2, and given the same treatment by the cell extraction team." (*Id.*)

These are the only allegations about Defendants Correctional Officers Unknown Parties #1–5. Notably, the facts alleged by Plaintiff show only that Defendants Unknown Parties #1–5 knew that Plaintiff had failed to comply with the direct order that Defendant Sergeant Vrabel had given Plaintiff in their presence. Plaintiff does not allege that Defendants Unknown Parties #1–5 had any knowledge of his hunger strike or his alleged weakened condition on March 5, 2025. Under these circumstances, the fact that Defendants Unknown Parties #1–5 participated in extracting Plaintiff from his cell after he disobeyed a direct order does not show that they used excessive force against Plaintiff. As noted above, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Cordell*, 759 F.3d at 580 (citation omitted). And, Plaintiff's own allegations show that he did not comply with a direct order. Moreover, Plaintiff's vague allegation that after Plaintiff complied with the

21

initial cell extraction and was taken to medical, he "was taken to another cell, Q-2, and given the same treatment by the cell extraction team," without any facts about what "treatment" Plaintiff is referring to and any facts about the named Defendants involved, is insufficient to state a claim upon which relief may be granted.  (Compl., ECF No. 1, PageID.11.)  Therefore, for these reasons, Plaintiff's Eighth Amendment excessive force claims against Defendants Correctional Officers Unknown Parties #1– 5 will be dismissed.

However, with respect to Defendant Sergeant Vrabel, Plaintiff alleges that at around 2:00 p.m. on March 5, 2025, prior to the cell extraction, Plaintiff separately informed Defendant Sergeant Vrabel "that he [wa]s not able to walk to the medical station," and "Plaintiff then offer[ed] to explain to the Defendant that he is not refusing the direct order [and] then asking Defendant to bring the chair so he can comply with the direct order," but "Plaintiff was denied."  (*Id.*, PageID.10.)  At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true. Under these circumstances, at this time, the Court will not dismiss Plaintiff's Eighth Amendment excessive force claim against Defendant Sergeant Vrabel because Plaintiff alleges that Vrabel knew about Plaintiff's weakened physical condition due to Plaintiff's hunger strike and, despite knowing this, proceeded with the use of force during the cell extraction.

### 2. Deliberate Indifference Claims Based on Knowledge of Plaintiff's Weakened Physical Condition on March 5, 2025, Prior to the Cell Extraction

Plaintiff alleges that on March 5, 2025, prior to the cell extraction, Plaintiff interacted with Defendants Warden Schroeder, ADW James, and Lieutenant Allen,

and he told them about his weakened physical condition, which consisted of being unable to walk, as well as "dizzy and lightheaded from not consuming any food." (Compl., ECF No. 1, PageID.9–10.)  Plaintiff also alleges that he informed these Defendants that he was not refusing to complete the vital and weight checks, but that he was asking to either be brought to medical in a wheelchair or to have the vital and weight checks performed at his cell.  (*See id.*)  Plaintiff claims that his requests were denied, and subsequently, he was extracted from his cell by the cell extraction team. Although Plaintiff has by no means proven his claims, at this early stage of the proceedings, the Court will not dismiss Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Warden Schroeder, ADW James, and Lieutenant Allen based on their knowledge of Plaintiff's weakened physical condition on March 5, 2025, prior to the other Defendants proceeding with the cell extraction.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Defendants Dr. Falk and Correctional Officers Unknown Parties #1–5 will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Warden Schroeder, ADW James, Lieutenant Allen, and Sergeant Vrabel: (i) official capacity claims against all remaining Defendants, (ii) Eighth Amendment conditions of confinement claims against Defendants ADW James, Lieutenant Allen, and Sergeant Vrabel regarding Plaintiff's unsanitary cell, and (iii) Eighth Amendment medical care claims against all remaining Defendants.  The following individual capacity claims remain in the

23

case: (i) Eighth Amendment conditions of confinement claim against Defendant Warden Schroeder regarding Plaintiff's unsanitary cell, (ii) Eighth Amendment excessive force claim against Defendant Sergeant Vrabel, and (iii) Eighth Amendment deliberate indifference claims against Defendants Warden Schroeder, ADW James, and Lieutenant Allen based on their knowledge of Plaintiff's weakened physical condition on March 5, 2025, prior to the cell extraction.

An order consistent with this opinion will be entered.

Dated:  March 23, 2026                        /s/ Phillip J. Green
                                         PHILLIP J. GREEN
                                         United States Magistrate Judge